UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

ASTOR FINLAYSON,

                              Plaintiff,

          -against-                                              5:05-CV-410
                                                                 (LEK/GHL)

MICHAEL J. ASTRUE,[1] Commissioner
of Social Security,

                              Defendant.
_____

## DECISION AND ORDER

### I.  BACKGROUND

**A.      Procedural History**

Plaintiff Astor Finlayson ("Plaintiff") filed applications for disability insurance benefits

("DIB") and supplemental security income ("SSI") on December 2, 2003.  Administrative

Transcript ("AT") 49-51; see AT 16, 38-41 (Dkt. No. 3).  The applications were denied initially and

a request was made for a hearing.  AT 38-42; see AT 16.  A hearing was held before an

administrative law judge ("ALJ") on August 10, 2004.  AT 165-80.  In a decision dated September

10, 2004, the ALJ found that Plaintiff was not disabled.  AT 16-23.  The ALJ's decision became the

final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review

on March 4, 2005.  AT 4-8, 143.  Plaintiff commenced this action on April 4, 2005 pursuant to 42

U.S.C. § 405(g), seeking review of the Commissioner's final decision.  Compl. (Dkt. No. 1).

**B.      Contentions**

Plaintiff makes the following claims:

(1)  Plaintiff's claims of pain were not considered.  Plntf's Brief (Dkt. No. 6) at 2.

_____

[1]  The Complaint named Jo Anne B. Barnhart as Defendant, then the Commissioner of
Social Security.  On February 12, 2007, Michael J. Astrue assumed that position.  Therefore, he
shall be substituted as the named Defendant pursuant to Fed. R. Civ. P. 25(d)(1).

(2)  The ALJ erred in determining that there were a significant number of jobs in the national economy that Plaintiff could perform.  Plntf's Brief  at 2.

(3)  This case should be "remanded and merged" with a prior claim for benefits.  Plntf's Brief at 2.

Defendant argues that the Commissioner's determination is supported by substantial evidence in the record, and must be affirmed.  Deft's Brief (Dkt. No. 7).

**C.     Facts**

Plaintiff, who was forty-six years old at the time of the ALJ's hearing, was born in Jamaica. AT 49, 170.  While there, he completed an educational level through the tenth grade.  AT 67, 170. In 1988, Plaintiff moved to the United States where he has worked as a farm worker, laborer, handyman, landscape laborer, automobile detailer, cook, and kitchen manager in a fast food restaurant.  AT 69, 171, 176.  Plaintiff is able to read and write English.  AT 173.

**1.     University Hospital**

While working as a landscape laborer on June 20, 2003, Plaintiff's feet became caught underneath a lawn mower, injuring his left big toe.  AT 69, 169; see AT 62.  Plaintiff was taken to the emergency room at University Hospital in Syracuse, New York where he was diagnosed as suffering from a fractured toe.  AT 118.  A "small bony fragment" was removed and his wound was sutured.  Id.  He was given an orthopedic shoe and prescribed medications.  Id.

Plaintiff returned several times to the emergency room and the orthopedic clinic at University Hospital with complaints of left foot and toe pain.  AT 103-17, AT 147-64.  He was diagnosed as suffering from, *inter alia*, a "painful neuroma"[2] along the medial digital nerve of the great left toe,[3] "painful, traumatic, and degenerative osteoarthritis of the first [metatarsophalangeal

---

[2]  A neuroma is a tumor growing from a nerve or made up largely of nerve cells and nerve fibers.  Dorland's Illustrated Medical Dictionary 1210 (29th ed. 2000) (hereinafter "Dorland's").

[3]  The "great toe," or the hallux, is the first digit of the foot.  Dorland's at 783, 1846.

("MTP")[4]] joint;" a "bony prominence at the first MTP joint dorsally;" a "left hallux rigidus;" and "progressively worsening MTP arthritis."  AT 103, 105, 147, 151, 153.  He was prescribed various medications, received pain relief injections, and was given an orthopedic shoe.[5]  AT 102, 104, 161.

On November 12, 2003, David Patalino, M.D., Chief Resident of Orthopedic Surgery at University Hospital, stated in a letter to the Workers' Compensation Board that Plaintiff "is being treated [in this] clinic for a painful neuroma . . . and painful, traumatic degenerative osteoarthritis." AT 135.  He opined that Plaintiff "is currently totally disabled from any form of work at this time." Id.

Approximately one year later, on November 10, 2004, Plaintiff underwent foot surgery.  AT 155-56.  A left first MTP fusion for posttraumatic hallux arthritis was performed.  Id.  There were no complications during surgery.  AT 156.

### 2.    Syracuse Community Health Center

On July 3, 2003, Plaintiff was seen at Syracuse Community Health Center (the "Center") with complaints of left foot swelling and pain.  AT 97.  He was diagnosed as suffering from cellulitis[6] and prescribed medication.  Id.  It was noted one week later that the cellulitis was "resolving."  AT 96.

From August 5, 2003 to September 10, 2003, Plaintiff saw Harold Horowitz, a podiatrist at the Center, with complaints of pain and discomfort in his left big toe.  AT 92-95.  He was prescribed

---

[4]  Metatarsophalangeal pertains to the metatarsus and the phalanges of the toes. Dorland's at 1096.

[5]  The record also reflects Plaintiff's complaints of pain in his right arm, left knee, neck, and back.  AT 101, 103, 161.

[6]  Cellulitis is an acute, diffuse, spreading, edematous, suppurative inflammation of the deep subcutaneous tissues and sometimes muscle, sometimes with abscess formation.  Dorland's at 317.  It is usually caused by infection of a wound, burn, or other cutaneous lesion by bacteria. Id.

medication.  Id.  On August 27, 2003, Dr. Horowitz noted that Plaintiff had decreased pain and discomfort.  AT 93.  Plaintiff was advised to continue taking an anti-inflammatory, which Dr. Horowitz noted that Plaintiff stated was helping.  Id.  On September 10, 2003, Dr. Horowitz diagnosed Plaintiff as suffering from a "painful left hallux valgus" for which he gave Plaintiff injections.  AT 92.

### 3.    William Dibble, D.O.

From November 6, 2003 to June 10, 2004, Plaintiff saw William Dibble, D.O.  AT 98-99, 139-42.  Initially, it was noted that Plaintiff's "only concern" was of an itchy rash on his lower abdomen and groin.  AT 99.  Dr. Dibble diagnosed Plaintiff as suffering from, *inter alia*, tinea cruris.[7]  Id.  He was prescribed various medications which improved this condition.  AT 98, 99.

Plaintiff returned with complaints of pain in his back, ankle, and knee.  AT 139, 140, 142.  Dr. Dibble diagnosed Plaintiff as suffering from, *inter alia*, degenerative joint disease, and back pain and knee pain secondary to degenerative joint disease.  AT 141.  Dr. Dibble prescribed various medications.  AT 140, 142.

### 4.    Kalyani Ganesh, M.D.

On December 18, 2003, Plaintiff underwent an orthopedic examination at the request of the agency by Kalyani Ganesh, M.D.  AT 120-22.  Examination revealed full ranges-of-motion in Plaintiff's hips, knees, and ankles bilaterally; and no joint effusion, inflammation, or instability except for "some soft tissue swelling of the left first toe."  AT 121.  An x-ray of Plaintiff's left foot and left toes revealed a "[s]mall spur at the head of the first metatarsal and evidence of old trauma at the interphalangeal joint of the left great toe; [o]therwise, unremarkable examination of the left foot."  AT 123.  Dr. Ganesh diagnosed Plaintiff as suffering from status post surgery for fracture of

---

[7]  Tinea cruris is tinea in the groin or perineal area.  Dorland's at 1843.

4

the left first toe.  AT 121.  He concluded that Plaintiff had no gross limitations in sitting or the use

of upper extremities, but mild to moderate limitations in standing, walking, and climbing.  AT 122.

### 5.    Joseph Ortiz, M.D.

On March 23, 2004, Plaintiff was examined for purposes of workers' compensation by

Joseph Ortiz, M.D.  AT 131-34.  Dr. Ortiz diagnosed Plaintiff as suffering from hallux rigidus in the

left first MTP joint with digital nerve neuroma, big toe.  AT 131.  Dr. Ortiz noted that an x-ray of

the left foot taken on July 22, 2003 showed "evidence of severe arthritic changes in the first [MTP]

joint with loss of articular cartilage and osteophyte formation."  AT 132.  He concluded that

Plaintiff "has not reached a point of maximum medical improvement so a degree of permanency

cannot be given;" but that Plaintiff "has a period of temporary total disability" and "is unable to

return to light or regular duty work."  Id.

### 6.    Leo Corazza, M.D.

The record also contains the medical opinion of Leo Corazza, M.D., who the ALJ identified

as "an impartial medical expert under contract with the Office of Hearings and Appeals and board

certified in Internal Medicine."  AT 19, 125-30.  On May 28, 2004, Dr. Corazza reviewed medical

evidence and concluded that Plaintiff's condition did not meet a listed impairment described in

section 1.00 of the Listing of Impairments.  AT 125.

## II.  DISCUSSION

### A.    Disability Standard

To be considered disabled, a plaintiff seeking DIB or SSI benefits must establish that he is

"unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or can

be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §

1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such severity that he is
> not only unable to do his previous work but cannot, considering his age, education,
> and work experience, engage in any other kind of substantial gainful work which
> exists in the national economy, regardless of whether such work exists in the
> immediate area in which he lives, or whether a specific job vacancy exists for him, or
> whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner uses a five-step process, set forth in 20 C.F.R. §§ 404.1520 and 416.920

to evaluate claims.

> First, the [Commissioner] considers whether the claimant is currently engaged in
> substantial gainful activity.  If he is not, the [Commissioner] next considers whether
> the claimant has a "severe impairment" which significantly limits his physical or
> mental ability to basic work activities.  If the claimant suffers such an impairment,
> the third inquiry is whether, based solely on medical evidence, the claimant has an
> impairment which meets or equals the criteria of an impairment listed in Appendix 1
> of the regulations.  If the claimant has such an impairment, the [Commissioner] will
> consider him disabled without considering vocational factors such as age, education,
> and work experience; . . . .  Assuming the claimant does not have a listed
> impairment, the fourth inquiry is whether, despite the claimant's severe impairment,
> he has the residual functional capacity to perform his past work.  Finally, if the
> claimant is unable to perform his past work, the [Commissioner] then determines
> whether there is other work which the claimant can perform.

Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982); see 20 C.F.R. §§ 404.1520, 416.920.

A plaintiff has the burden of establishing disability at the first four steps.  However, if a

plaintiff establishes that his impairment prevents him from performing his past work, the burden

then shifts to the Commissioner to prove the final step.  Berry, 675 F.2d at 467 (citations omitted).

In this case, the ALJ found at step one that Plaintiff has not engaged in substantial gainful

activity since the alleged onset date of disability.  AT 17.  At the second step, the ALJ determined

that Plaintiff's cellulitis, chronic pain, neuroma along the medial distal nerve of the great toe with

degenerative osteoarthritis, and hallux rigidus of the left first MTP joint with digital nerve neuroma

were severe.  AT 19.  At the third step, the ALJ concluded that those impairments neither met nor

equaled any impairment listed in Appendix 1 of the Regulations.  Id.  At the fourth step, the ALJ found that Plaintiff retained the RFC to perform a limited range of sedentary work.  AT 20.  The ALJ then found that Plaintiff was unable to perform any of his past relevant work.  Id.  At the fifth step, the ALJ referenced the Medical-Vocational Guidelines (the "grids") and the testimony of a vocational expert, and found that there were a significant number of jobs in the national economy that Plaintiff could perform.  AT 21-22.  The ALJ therefore concluded that Plaintiff was not disabled.  AT 22.

### B.    Scope of Review

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. Rosado v. Sullivan, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (citing, inter alia, Johnson v. Bowen, 817 F.2d 983, 985 (2d Cir. 1987)).  A reviewing court may not affirm an ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence.  Johnson, 817 F.2d at 986.  In addition, an ALJ must set forth the crucial factors justifying his findings with sufficient specificity to allow a court to determine whether substantial evidence supports the decision.  Ferraris v. Heckler, 728 F.2d 582, 587 (2d Cir. 1984).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision.  42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991).  "Substantial evidence has been defined as 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Williams on behalf of Williams v. Bowen, 859 F.2d 255, 258 (2d Cir. 1988)(citations omitted).  It must be "more than a scintilla" of evidence scattered throughout the administrative record.

Richardson v. Perales, 402 U.S. 389, 401 (1971)(quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197 (1938)).

"To determine on appeal whether an ALJ's findings are supported by substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." Williams, 859 F.2d at 258 (citations omitted).  However, a reviewing court cannot substitute its interpretation of the administrative record for that of the Commissioner if the record contains substantial support for the ALJ's decision.  Blalock v. Richardson, 483 F.2d 773, 775 (4th Cir. 1972); see also Rutherford v. Schweiker, 685 F.2d 60, 62 (2d Cir. 1982), cert. denied, 459 U.S. 1212 (1983).

### C.    Credibility

"An [ALJ] may properly reject [subjective complaints] after weighing the objective medical evidence in the record, the claimant's demeanor, and other indicia of credibility, but must set forth his or her reasons 'with sufficient specificity to enable us to decide whether the determination is supported by substantial evidence.'"  Lewis v. Apfel, 62 F. Supp. 2d 648, 651 (N.D.N.Y. 1999) (quoting Gallardo v. Apfel, No. 96 CIV 9435, 1999 WL 185253, at *5 (S.D.N.Y. Mar. 25, 1999)). To satisfy the substantial evidence rule, the ALJ's credibility assessment must be based on a two-step analysis of pertinent evidence in the record.  See 20 C.F.R. §§ 404.1529, 416.929; see also Foster v. Callahan, No. 96-CV-1858, 1998 WL 106231, at *5 (N.D.N.Y. Mar. 3, 1998).

First, the ALJ must determine, based upon the claimant's objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged."  20 C.F.R. §§ 404.1529(a), 416.929(a).  Second, if the medical evidence alone establishes the existence of such impairments, then the ALJ need only evaluate the intensity,

persistence, and limiting effects of a claimant's symptoms to determine the extent to which it limits the claimant's capacity to work.  Id. §§ 404.1529(c), 416.929(c).

When the objective evidence alone does not substantiate the intensity, persistence, or limiting effects of the claimant's symptoms, the ALJ must assess the credibility of the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms.  Id. §§ 404.1529(c)(3), 416.929(c)(3).

Plaintiff argues that his allegations of pain were not considered.  Dkt. No. 6 at 2.  However, the decision reflects that in determining that Plaintiff was not totally credible, the ALJ discussed Plaintiff's allegations to some extent.  AT 19-20.  Indeed, the ALJ reviewed and discussed the location, duration, frequency, and intensity of Plaintiff's symptoms; precipitating and aggravating factors; the type, effectiveness, and side effects of medication taken to relieve symptoms; other treatment received to relieve symptoms; and measures taken by Plaintiff to relieve symptoms.[8]  Id.

In addition, the ALJ pointed out that while Plaintiff testified to using a crutch, Plaintiff's counsel admitted that the record gave no indication that a crutch was prescribed to Plaintiff.  AT 19;

---

[8]  In determining Plaintiff's credibility, the ALJ also discussed that Dr. Patalino opined that Plaintiff was totally disabled, but the ALJ correctly found that this opinion addressed an issue reserved for the Commissioner.  AT 20; see AT 135; see also See Snell v. Apfel, 177 F.3d 128, 133 (2d Cir. 1999) (citing 20 C.F.R. § 404.1527(e)(1)).  Moreover, Dr. Patalino's opinion was rendered in the context of workers' compensation which is governed by standards different from the disability standards under the Social Security Act.  See Crowe v. Comm'r of Soc. Sec., No. 6:01-CV-1579, 2004 WL 1689758, at *3 (N.D.N.Y. July 20, 2004) (Sharpe, J.) (citation omitted).

see AT 174.  Moreover, in a questionnaire entitled "Function Report" dated December 16, 2003, Plaintiff indicated that he used crutches, but when asked to identify if the crutches were prescribed by a doctor and to identify the doctor, Plaintiff provided no responses.  AT 83.  In a "Report of Contact" completed by a disability analyst on January 5, 2004, it was noted that Plaintiff stated that his landlord obtained the crutch.  AT 88.  Further, consultative examiner Dr. Ganesh found that Plaintiff's "use of the crutch is not necessary."  AT 121.  The Court notes that "the absence of objective medical evidence supporting an individual's statements about the intensity and persistence of pain or other symptoms" is one factor that an ALJ must consider in assessing a claimant's credibility.  Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *6 (July 2, 1996).

Moreover, on June 29, 2004, Plaintiff returned to the emergency room at University Hospital with complaints of left great toe pain.  AT 157.  The attending physician noted that Plaintiff stated that he "usually takes Tylenol with codeine or Lortab for his pain, but he is apparently out.  He told the nurses that he had an appointment on this Friday to get it refilled.  When I asked him if he could wait until Friday, he stated the did not 'really' have an appointment on Friday."  Id.  The Court notes that "[o]ne strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record."  SSR 96-7p, 1996 WL 374186, at *5.  Moreover, statements made to treating or examining medical sources are "[e]specially important." Id.

In light of the foregoing, the ALJ's determination of Plaintiff's credibility is supported by substantial evidence.  The ALJ discussed the relevant factors set forth in the regulations and pointed out the lack of medical evidence regarding Plaintiff's use of a crutch.  Moreover, the record suggests the inconsistent nature of Plaintiff's statements to an examining medical source.

**D.      Work Existing in the National Economy**

Where a claimant is able to demonstrate that his or her impairments prevent a return to past relevant work, the burden then shifts to the Commissioner to prove that a job exists in the national economy which the claimant is capable of performing.  See Curry v. Apfel, 209 F.3d 117, 122 (2d Cir. 2000); 20 C.F.R. §§ 404.1560(c), 416.960(c).  Work exists in the national economy when it exists in significant numbers either in the region where the claimant lives or in several other regions in the country.  20 C.F.R. §§ 404.1566(a), 416.966(a).  In making this determination, the ALJ may apply the grids or consult a vocational expert.  See Rosa v. Callahan, 168 F.3d 72, 78 (2d Cir. 1999); 20 C.F.R. pt. 404, subpt. P, App. 2.  If the claimant's characteristics match the criteria of a particular grid rule, the rule directs a conclusion as to whether he or she is disabled.  Pratts v. Chater, 94 F.3d 34, 38-39 (2d Cir. 1996).  However, if a claimant suffers from non-exertional impairments that "significantly limit the range of work permitted by exertional limitations," the ALJ should elicit testimony from a vocational expert to determine if jobs exist in the economy that the claimant can still perform.  Id. at 39 (quoting Bapp v. Bowen, 802 F.2d 601, 605-06 (2d Cir. 1986)); 20 C.F.R. §§ 404.1566(e), 416.966(e).  The vocational expert may testify as to the existence of jobs in the national economy, and as to the claimant's ability to perform any of those jobs, given his functional limitations.  See Colon v. Comm'r of Soc. Sec., No. 6:00-CV-0556, 2004 WL 1144059, at *6 (N.D.N.Y. Mar. 22, 2004) (Sharpe, J.).

In this case, the ALJ found that Plaintiff retained the RFC to perform "unskilled work with 1-2 step instruction, full range of sedentary level work[9] with sit/stand option, only occasional

---

[9]  "Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools.  Although a sedentary job is defined as one which involves sitting, a certain amount of walking and standing is often necessary in carrying out job duties.  Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met."  20 C.F.R. § 404.1567(a).  Sedentary work generally involves up to two hours of standing or walking and six hours of sitting in an

reaching and English is not his primary language." AT 20. In order to determine if other work existed in the national economy that Plaintiff could perform, the ALJ elicited the testimony of a vocational expert. AT 175-78. The vocational expert testified that an individual with a similar background could perform unskilled security work (115,000 jobs nationally; 85 jobs locally); unskilled office clerical worker (95,000 jobs nationally, 1,200 jobs regionally); assembly production work (110,000 jobs nationally, 320 jobs regionally); and packer/inspector positions (220,000 jobs nationally, 150 jobs regionally). AT 176-78.

Plaintiff argues that he would be unable to perform any of the jobs cited by the vocational expert because of an inability to concentrate due to pain, and because he is in pain while sitting and standing.[10] Dkt. No. 6 at 2. The Court has already found that the ALJ's determination that Plaintiff is not totally credible is supported by substantial evidence. See Part II.C.

Moreover, Plaintiff's own statements belie his claims. Regarding his ability to concentrate, Plaintiff specifically indicated in the Function Report questionnaire that he had no problems paying attention. AT 83. He also indicated that he was able to follow spoken and written instructions. Id.

Regarding his allegations of pain while sitting and standing, Plaintiff testified that he sits and stands as needed in order to relieve his toe. AT 173-74. The RFC determination encompassed this limitation, allowing Plaintiff to sit or stand as needed. AT 20. It is also noted that in the Function Report questionnaire, Plaintiff was asked to indicate which functional abilities were affected by his conditions. AT 77-84. In order to indicate which abilities were affected, Plaintiff circled various preprinted terms. AT 82. However, he did not circle "sitting." Id. Moreover, Dr. Ganesh opined that Plaintiff had no gross limitations in sitting and only mild to moderate limitations in standing.

---

eight-hour workday. Perez v. Chater, 77 F.3d 41, 46 (2d Cir. 1996) (citation omitted).

[10] The Court notes that while Plaintiff cites to the hearing testimony, he provides no supporting citation to medical evidence.

AT 122.  Further, an emergency room record from University Hospital dated December 12, 2003 states that Plaintiff was performing "heavy cleaning" in his house and moving furniture two days earlier.  AT 101-02.  In light of the foregoing, the Court finds Plaintiff's claims unavailing.

Plaintiff also argues that the ALJ's determination is flawed because Plaintiff has no prior experience performing the jobs cited by the vocational expert and because he would be unable to obtain such jobs.  Dkt. No. 6 at 2.  However, according to the Regulations, it is of no consequence whether "(1) Work exists in the immediate area in which you live; (2) A specific job vacancy exists for you; or (3) You would be hired if you applied for work."  Id.  Accordingly, Plaintiff's claims are unavailing.[11]

### E.     Request to Remand

Plaintiff requests that this case be "remanded and merged" with a prior claim he filed for benefits.  Dkt. No. 6 at 2.  He argues that this would allow for "review as to whether the aforesaid symptoms were present but overlooked in the prior proceeding."  Id.  A reviewing court has the authority to reverse with or without remand.  42 U.S.C. §§ 405(g), 1383(c)(3).  Remand is appropriate where there are gaps in the record or further development of the evidence is needed.  Curry, 209 F.3d at 124.  In this case, there are no gaps in the record or the need for further development of the evidence.  Accordingly, Plaintiff's request is denied.

---

[11]  To the extent that Plaintiff argues that the ALJ's determination is flawed because Plaintiff has a "tenth grade Jamaican education," Dkt. No. 6 at 2, the ALJ specifically asked the vocational expert to consider Plaintiff's education and that English is not Plaintiff's primary language.  AT 177.  Moreover, Plaintiff testified that he reads and writes English.  AT 173.

## III. CONCLUSION

Based on the foregoing discussion, it is hereby

**ORDERED**, that the Commissioner's determination of no disability **AFFIRMED,** and

Plaintiff's complaint in this case be **DISMISSED** in all respects, and it is further

**ORDERED**, that the Clerk serve a copy of this Order on all parties.

**IT IS SO ORDERED**.

DATED:          January 18, 2008
               Albany, New York

Lawrence E. Kahn
U.S. District Judge